```
                       UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLUMBIA

_____
                              )
SOUTHEAST ALABAMA MEDICAL      )
CENTER, et al.,                )
                              )
        Plaintiffs,            )
                              )
        v.                     )    Civil Action No. 04-1143 (RWR)
                              )
MICHAEL O. LEAVITT,            )
                              )
        Defendant.             )
_____)
```

## MEMORANDUM OPINION

Plaintiffs, 113 hospitals located in Alabama, Louisiana and Mississippi, bring a challenge under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, to certain regulations implementing a provision of the Medicare Act, specifically 42 U.S.C. § 1395ww(d)(3)(E), arguing that the defendant Secretary of the Department of Health and Human Services exceeded his lawful authority in adopting them. The Secretary has filed a motion for summary judgment, and the hospitals have filed a cross-motion. Because the hospitals have not established that a genuine issue exists that the Secretary's regulations were unambiguously forbidden by the statute or otherwise unreasonable, their motion will be denied and the Secretary's motion will be granted.

BACKGROUND

The hospitals challenge regulations that the Secretary adopted in 2002 and 2003 under the governing provision of the Medicare Act to determine certain payments to hospitals for fiscal years 2003 and 2004.  (See Compl. ¶¶ 20-26.)  The text of the statute that is at the center of this dispute is:

> (E) The Secretary shall adjust the proportion, (as estimated by the Secretary from time to time) of hospitals' costs which are attributable to wages and wage-related costs, of the DRG[1] prospective payment rates computed under subparagraph (D) for area differences in hospital wage levels by a factor (established by the Secretary) reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level.  Not later than October 1, 1990, and October 1, 1993 (and at least every 12 months thereafter), the Secretary shall update the factor under the preceding sentence on the basis of a survey conducted by the Secretary (and updated as appropriate) of the wages and wage-related costs of subsection (d) hospitals in the United States.  Not less often than once every 3 years the Secretary (through such survey or otherwise) shall measure the earnings and paid hours of employment by occupational category and shall exclude data with respect to the wages and wage-related costs incurred in furnishing skilled nursing facility services.  Any adjustments or updates made under this subparagraph for a fiscal year (beginning with fiscal year 1991) shall be made in a manner that assures that the aggregate payments under this subsection in the fiscal year are not greater or less than those that would have been made in the year without such adjustment.

---

[1] DRG is the acronym for "diagnosis-related groups." (Def.'s Mot. at 11.)

42 U.S.C. § 1395ww(d)(3)(E) (effective Dec. 21, 2000 to Dec. 7, 2003).  The "factor" ("Factor") referred to in the statute,[2] is a ratio constructed of elements not precisely prescribed in the statute.  The "proportion" ("Proportion")[3] of hospital costs, also referred to in the statute, is also a construct of elements not precisely prescribed in the statute.  The Factor and the Proportion are key determinants of a hospital's Medicare Payments.

In 1987, Congress acknowledged the desirability of accounting for occupational mix in the Factor and, by amending an earlier version of this statute, directed the Secretary to "measure the earnings and paid hours of employment by occupational category," but only "to the extent deemed feasible by the Secretary."  (Pls.' Mot. for Summ. J. ("Pls.' Mot.") at 75.)  "It appears that when given such discretion, the Secretary never found it feasible to [account for occupational mix]."  Bellevue Hosp. Ctr. v. Leavitt, 443 F.3d 163, 172 n.10 (2d Cir. 2006) (citing Final Rules, 66 Fed. Reg. 39,828, 39,860 (Aug. 1, 2001) (noting that the Secretary had previously determined that the collection of the occupational mix data would

---

[2]  The Factor is also referred to in the regulations and by the parties as the wage index.  Here, the term Factor will be used.

[3]  The Proportion is also referred to in the regulations and by the parties as the labor-related share.  Here, the term Proportion will be used.

-4-

be "costly and difficult")).  In 2000, the Secretary's discretion in the matter was curtailed with another amendment that required the Secretary to measure occupational mix at least once every three years, and to collect the necessary data by September 30, 2003 for application on October 1, 2004.  (Def.'s Opp'n at 42 & n.32.)

In support of their motion for summary judgment, the hospitals argue that the Secretary violated the law in five ways.  First, they contend that the express language of the statute limits the elements comprising the Proportion to wages and wage-related costs, and that the Secretary's regulation impermissibly includes elements in the Proportion that cannot reasonably be considered wage or wage-related costs.  (Pls.' Mot. at 5.)  Second, they argue that the statute's text expressly limits the Proportion to those things that vary locally.  (Id.)  The hospitals' third argument is that the Secretary's definition of wage and wage-related costs varies between the Factor and the Proportion, and is therefore an impermissible construction of the statute's terms.  (Id. at 6.)  In addition, the hospitals maintain that the Secretary's delay in developing an occupational mix for incorporation into the calculation of the Factor was unreasonable.  (Id.)  Finally, they assert that the Factor calculation is unreasonable because it fails to take account of interstate employment in the hospitals' labor force.  (Id.)  The

-5-

Secretary has also filed a motion for summary judgment, in which he disputes the hospitals' conclusions and defends his regulations as not unambiguously forbidden or unreasonable, and well within the discretion he was accorded by law.

## DISCUSSION

The plaintiff hospitals bring this action under 42 U.S.C. § 1395oo(f), after having allegedly exhausted their administrative remedies before the Provider Reimbursement Review Board.  (Compl. ¶ 1.)  A challenge to agency action is reviewed under the two-step analysis articulated in Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984).  Where the statute is unambiguous, the question is whether the secretary has complied with the requirements of the statute.  Where the statute is silent or ambiguous, the question is whether the secretary's construction of the statute is reasonable.  Bellevue, 443 F.3d at 174 (citing Chevron, 467 U.S. at 842-43).  In short, a challenge to a regulation implementing a statute will succeed only if the statutory text "unambiguously forbids" the secretary's interpretation or if the interpretation otherwise "exceeds the bounds of the permissible."  Barnhart v. Walton, 535 U.S. 212, 218 (2002) (citing Chevron, 467 U.S. at 843).  "[I]t is axiomatic that [a secretary's] interpretation need not be the best or most natural one[,]" Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 702 (1991), provided it falls "within the bounds of

-6-

reasonable interpretation." <u>Your Home Visiting Nurse Servs., Inc. v. Shalala</u>, 525 U.S. 449, 453 (1999) (citing <u>Chevron</u>, 467 U.S. at 842).  The parties agree that the intent of Congress is clear from the text of the statute.  (Pls.' Mot. at 26; Def.'s Mot. at 33.)

Summary judgment may be granted only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>Burke v. Gould</u>, 286 F.3d 513, 517 (D.C. Cir. 2002).  The relevant inquiry "is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).  A material fact is one that is capable of affecting the outcome of the litigation.  <u>Id.</u> 477 U.S. at 248.  A genuine issue is one where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," <u>id.</u>, as opposed to evidence that "is so one-sided that one party must prevail as a matter of law."  <u>Id.</u> at 251-52.  In considering a motion for summary judgment, all "justifiable inferences" from the evidence are to be drawn in favor of the nonmovant.  <u>Id.</u> at 255.  The

party opposing summary judgment must "come forward with 'specific facts showing that there is a genuine issue for trial.'"  Id. at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).  In the end, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Here, then, the disposition of the parties' motions turns on the existence of any genuine issue as to whether the Secretary's interpretation of the statute, as reflected by the implementing regulations employed, was unambiguously forbidden or unreasonable.

I.   WAGE AND WAGE-RELATED COST ELEMENTS IN THE PROPORTION

The hospitals argue that the Secretary's construction of the wage and wage-related cost elements included in the Proportion is unreasonable in light of the express language of the statute. Wages and wage-related costs are terms that are not defined in the statute.  The hospitals contend that "fringe benefits, professional fees [such as those charged by national accounting firms], contract labor, . . . business services, and [other] labor-intensive services [such as those charged by landscaping services]," which are elements included in the Proportion, are

-8-

not fairly contemplated by the statute's terms "wages" and "wage-related costs."[4]  (Pls.' Mot. at 14 (bracketed material in the original).)  More specifically, they argue that the cost of workers compensation insurance and fringe benefits -- including employee health, dental, disability, and life insurance, 401K or other employee pension plans, educational assistance payments, mass-transit and parking subsidies -- are not wage-related costs. (Id. at 43-48.)[5]

Given that neither the term "wages" nor the term "wage-related costs" is defined within the statute, their common meaning is to be assumed.  See United Scenic Artists v. Nat'l Labor Relations Bd., 762 F.2d 1027, 1032 n.15 (D.C. Cir. 1985) ("It is an elementary principle of statutory construction that ordinarily the plain meaning of statutory language controls, i.e., 'words should be given their common and approved usage.'") (quoting 2A Sutherland Statutory Construction § 46.06 at 74 (4th ed. 1984)).  As the Secretary notes, fringe benefits are commonly defined as wage-related.  (Def.'s Opp'n at 20-21.)  Indeed, some

---

[4] The hospitals also maintain that postage is not a wage-related cost.  After this action was filed, the Secretary excluded postage from the cost elements that define the Proportion.  (See Def.'s Notice of Rulemaking, Aug. 24, 2005.)

[5] In addition, the hospitals assert that general liability and fire and property insurance is not a wage-related cost (Pls.' Mot. at 45), but the Secretary states that these insurance costs were not considered in the Proportion (Def.'s Opp'n at 23), and the hospitals do not dispute that assertion in their Reply.

-9-

dictionaries define the term "wage" itself to include fringe benefits, not merely as costs related to wages.  See, e.g., Webster's Third New International Dictionary of the English Language at 2568 (1993) (defining a wage as "a pledge or payment of usually monetary remuneration by an employer especially for labor or services usually according to contract and on an hourly, daily, or piecework basis and often including bonuses, commissions, and amounts paid by the employer for insurance pension, hospitalization and other benefits") (abbreviations in the original replaced with whole words).

Further, the hospitals argue that fees paid by hospitals to outside consultants or firms for management, consulting, accounting, and legal services are not wages or wage-related costs.  (Pls.' Mot. at 50-51.)  To reach this conclusion, the hospitals assert that the statute contemplates only the wages and wage-related costs paid directly by the hospital to the individual providing the service to the hospital, whether that individual is an independent contractor or a hospital employee. (See id. at 14 (distinguishing "wages and salaries paid to a hospital's employees, as well as the payments made directly by a hospital to its non-employee independent contractors, such as physicians or nurses providing direct patient care" from costs that plaintiffs assert are not contemplated by the term in the

-10-

statute, such as fringe benefits for hospital employees and professional fees for services other than direct patient care.)

The statute refers to "the proportion . . . of hospitals' costs which are attributable to wages and wage-related costs." On its face, then, the statute does not support the hospitals' argument. The statute does not expressly limit the wages and wage-related costs to those paid by the hospital directly to an individual, as opposed to some third-party employer of individuals providing hospital services, even though it could have been written to express clearly the limitation the plaintiff hospitals urge.[6] Viewing their argument in the light most favorable to them, the hospitals urge an interpretation that requires treating the words "costs which are attributable to" as surplusage, and to give meaning only to the words "hospitals' wages and wage-related costs." Here, as the Supreme Court has said elsewhere, "[a] reluctance to treat statutory terms as surplusage supports the reasonableness of the Secretary's interpretation." Babbitt v. Sweet Home Chapter of Comtys. for a Great Oregon, 515 U.S. 687, 698 (1995). Accordingly, plaintiffs' construction fails in the face of the plain language of the text.

---

[6] Several alternatives might arguably support plaintiffs' construction. For example, the statute could have been written as follows: "the proportion of wages and wage-related costs paid by a hospital to its employees and its independent contractors providing direct patient care," or "the proportion of a hospitals' wages and wage-related costs." But, the statute was not written that way.

II.  ELEMENTS THAT VARY LOCALLY IN THE PROPORTION

The plaintiff hospitals also argue that the "statute clearly reflects Congress' intent that only hospital 'wage and wage-related costs' that vary on a local basis are to be" included in the Proportion.  (Pls.' Mot. at 26; see also id. at 46-47 (arguing that workers compensation rates are set on a statewide, not local, basis and therefore are not within the definition of the statute's Proportion).)  On this premise, the hospitals argue that several cost elements that are included in the Proportion should not be included, because they do not vary by locality.  (Id. at 47, 57.)

Again, however, the hospitals' argument cannot be squared with the plain language of the statute.  The statute mandates that the Secretary "shall adjust the [P]roportion . . . for area differences."  The statute employs the terms "area differences," "geographic area" and "national average."  The word "local" does not appear in the statute.  Furthermore, the statute simply does not state or imply that the Proportion is to be calculated on the basis of costs that only vary by locality.  The text of the statute does not support plaintiffs' construction that would restrict the cost elements in the Proportion to those that vary between localities.

## III. COST ELEMENTS DIFFER BETWEEN FACTOR AND PROPORTION

The parties agree that the terms "wages" and "wage-related costs" are used in the statute in association with both the Proportion and the Factor.  (Pls.' Mot. at 63; Def.'s Opp'n at 39.)  The plaintiff hospitals argue that the Secretary violated "unambiguous statutory requirements" by using a "significantly different definition of 'wage and wage-related costs'" for the Proportion than that used for the Factor.  (Pls.' Mot. at 63-64.)  In the alternative, they argue that the Secretary acted in an "arbitrary and unreasonable" fashion in using inconsistent definitions of "an identical cost category." (Id. at 64.)[7]  Specifically, they maintain that the Secretary's regulations are impermissible because they allow the Proportion to be calculated on the basis of a greater number of cost elements than are used to calculate the Factor.  (Compl. ¶ 54.)

The Secretary admits that "there are cost elements included in the labor-related share [i.e, the Proportion] that are not included in the wage index [i.e., the Factor]" (Answer ¶ 54), but defends his methods as reasonable because "the context in which the wage-related share [i.e., the Proportion] is estimated is very different from the context in which the wage index [i.e.,

---

[7] Plaintiffs' alternative argument implies, without expressing, that the terms at issue might be something other than unambiguous.  Even if plaintiffs intended this implication, which is not clear, it makes no difference to the analysis of the argument they make, or the result.

the Factor] is calculated.  These differences, in turn, account for the differences in the cost elements included in the two calculations."  (Def.'s Opp'n at 39.)

In fact, the statute instructs the Secretary to devise two different constructs, each based on the same information, for two different purposes.  As the Secretary notes (id. at 39-40), the statute directs the Secretary to estimate the Proportion of "costs," while it directs the Secretary to establish a Factor that reflects "hospital wage level[s]" in different geographic areas relative to the national average.  Wage levels and wage-related costs will necessarily be defined by different component elements.  This in no way means that the terms "wages and wage-related costs" are themselves defined variously.  It merely means that one subset of the cost elements that define "wages and wage-related costs" is used to define the Proportion of "costs" and some other subset is used to define the Factor reflecting "hospital wage levels" by area.  Thus, the plaintiff hospitals have not shown that the Secretary uses a varying definition of identical terms, but only that the two distinct constructs are in fact defined by two distinct sets of elements.  Nor have plaintiffs shown that the two constructs the Secretary was directed to develop are unreasonable or arbitrary in light of the statute's mandate.  The hospitals' argument that the Secretary has exceeded his authority in this regard fails.

-14-

IV.  DELAY IN DEVELOPING THE OCCUPATIONAL MIX

The plaintiff hospitals assert that "for the period 1987 through 2003, the Secretary did not take any action whatsoever to require, let alone encourage, hospitals to provide occupational data mix."  (Pls.' Mot. at 80 (emphasis in the original omitted).)  This, they contend, demonstrates that the Secretary "disregarded the question of feasibility and instead gave voice to his own policy view[.]"  (Id. at 84.)  They argue that had the Secretary complied with the Congressional mandate to collect information on occupational mix, the hospitals would have been reimbursed at greater amounts in 2002 and 2003 than they actually received.  (Id. at 80 n.61 (claiming that the Secretary's failure to account for occupational mix caused the plaintiff hospitals to be under-compensated by at least $54.2 million).)  The Secretary defends his conduct noting that until 2000, the matter was committed expressly to his judgment regarding what was feasible, which is arguably not reviewable, and that after 2000, he was required only to collect the information by September 30, 2003 for application in October 2004.  (Def.'s Opp'n at 42-43.)

The statute's deadlines for incorporating information on occupational mix into the Factor are not ambiguous.  There were no deadlines before September 30, 2003.  Thus, no basis exists on which to conclude that the Secretary was unambiguously required

-15-

to collect information on occupational mix prior to September 30, 2003.

Congress' inclusion in its statutory directive the caveat "to the extent deemed feasible by the Secretary" indicates both an acknowledgment that such an undertaking might not be deemed feasible, and a decision to commit that judgment solely to the Secretary. Given that Congress did not dictate any predicates for determining what was or was not feasible, there is no basis on this record on which to conclude that the Secretary's choice to not collect the information in time for it to be applied in 2002 and 2003 was unambiguously forbidden by the statute. Nor have the plaintiff hospitals supported their alternative claim that the Secretary's judgment on this point was "arbitrary and capricious." (Pls.' Mot. at 83.) Although the hospitals stress that the Prospective Payment Assessment Commission disagreed in 1991 with the Secretary's conclusion regarding the feasibility of collecting occupational mix information (id. at 81), such a showing does not demonstrate that the Secretary's decision "exceed[ed] the bounds of the permissible." Barnhart, 535 U.S. at 218; see also Pauley, 501 U.S. at 702. Even knowing of the differing opinions, Congress waited another nine years before taking the discretion over this decision from the Secretary. These facts do not support a conclusion that the Secretary's feasibility determination was so unreasonable that it exceeded

the bounds of the permissible.  Plaintiffs' argument that the Secretary acted illegally does not survive in the face of these facts.

V.   INTERSTATE EMPLOYMENT AND MIGRATION

The hospitals allege that the Secretary's regulations are arbitrary and capricious because they do not take into account the fact that hospitals with different Factor ratios compete in the same population for employees.  (Pls.' Mot. at 87.)  The Secretary asserts, and the plaintiff hospitals do not dispute, that the hospitals did not raise this issue before the Provider Reimbursement Review Board, as they must before raising the issue here.  See 5 U.S.C. § 704 (requiring finality of agency action for judicial review); 42 U.S.C. § 1395oo(f) (providing that the decisions of the board are final); see also Humana of So. Carolina, Inc. v. Califano, 590 F.2d 1070, 1075 (1978) ("[T]he review procedure applicable to provider-reimbursement disputes is found in Section 1395oo.  Under that provision, administrative review must be obtained before the Provider Reimbursement Review Board when a provider is displeased with the total amount of reimbursement . . . .  Following a 'final decision' by the Board or a 'reversal, affirmance, or modification' thereof by the Secretary, a provider can press its claims in a federal court.") (statutory citations omitted).  Accordingly, this issue is not considered here.

## CONCLUSION

Because the plaintiff hospitals have not shown that the Secretary's regulations are unambiguously forbidden by the statute or otherwise exceed permissible bounds, the hospitals' motion [22] for summary judgment will be denied and the Secretary's motion [14] for summary judgment will be granted.  An appropriate order accompanies this memorandum opinion.

SIGNED this 26th day of March, 2008.


                                  _____/s/_____
                                  RICHARD W. ROBERTS
                                  United States District Judge